IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BOBBY KIMBLE,

                Plaintiff

v.

GARY BOUGHTON, KARTMAN, GARDNER, DICKMAN, WINKIESKI, MINK, and BROADBENT

                Defendants.

OPINION AND ORDER

Case No.  19-cv-645-slc

---

*Pro se* plaintiff Bobby Kimble is proceeding in this lawsuit under 42 U.S.C. § 1983, on claims challenging the constitutionality of his continued placement on Administrative Confinement (AC) status at the Wisconsin Secure Program Facility (WSPF).  Specifically, Kimble is proceeding against defendant Gary Boughton on a First Amendment retaliation claim, and against defendants Boughton, Kartman, Gardner, Dickman, Winkieski, Mink, and Broadbent on Fourteenth Amendment due process claims.  The parties are in the process of briefing cross motions for summary judgment.  Kimble also has ten pending discovery motions which I am resolving in this order.

    First, I am denying Kimble's motion to deny an extension (dkt. 65) and motion for an immediate injunction order and hearing (dkt. 66).  I already have granted defendants' request for an extension, so Kimble's objection is moot.  In his request for an immediate injunction order, Kimble argues the merit of his Fourteenth Amendment due process claim, but he has not followed this court's procedures for seeking preliminary injunctive relief that require Kimble to submit proposed findings of fact and supporting evidence.  Further, Kimble does not attempt to show that his circumstances satisfy the threshold requirements for preliminary injunctive relief.  *See Mays v. Dart*, 974, F.3d 810, 818 (7th Cir. 2020 ("To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will suffer irreparable harm; (2) traditional

legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims.") (citations and internal quotation marks omitted).  Accordingly, I am denying this motion as well.

**Motion to dismiss (dkt. 62)**

Kimble asks to dismiss his First Amendment retaliation claim against defendant Gary Boughton and to dismiss defendant Gardner from this lawsuit.  Kimble agrees that these dismissals may be with prejudice.  I will grant these requests and dismiss Kimble's retaliation claim against Boughton and his Fourteenth Amendment due process claim against Gardner. That takes Gardner out of the lawsuit. These dismissals will be with prejudice.

**Motions for stipulation (dkt. 83, 84)**

Kimble submitted motions for a stipulation that certain facts are undisputed, drawing numerous proposed undisputed facts from defendants' responses to his requests for admissions (RFAs).  However, Kimble is asking that the court require the parties to stipulate to certain facts, some of which are not related to the parties' motions for summary judgment.  That's not going to happen, at least not now, maybe not ever. Defendants point out that in their responses to Kimble's RFAs they have objected to some of Kimble's requests, *see* dkt. 83-2.  This means that resolving Kimble's motions would require legal and factual determinations regarding numerous purported undisputed facts.  Depending on how the court rules on the pending dispositive motions, many of the facts Kimble includes in his list of proposed stipulated facts may fall by the boards.  So I agree with defendants that Kimble's motion is premature.  Granting it would

be an unnecessary use of the parties' and the court's resources, so I will deny the motion. Kimble may use defendants' current responses to his requests for admissions in response to defendants' motion for summary judgment. We will revisit this issue after summary judgment. Defendants recognize that if this case proceeds to trial, it will be appropriate to stipulate to certain facts at that time.

**Motions to compel (dkt. 70, 85, 95)**

Kimble has filed two motions to compel. In the first, Kimble challenges defendants' responses to certain interrogatory and document requests, asking the court to set a deadline by which defendants must respond. Because Kimble has not identified a deficiency in defendants' responses, I am denying this motion.

In Interrogatories 1 and 2, Kimble asked Boughton why he did not allow Kimble to be promoted to the green phase of HROP until August 17, 2018, and why Boughton now believes that Kimble qualifies for promotion to a phase of the PACE program that permits him to leave his cell without restraints. Boughton did not object to these questions, and he provided substantive responses, explaining his past and present thought processes. (*See* dkt. #86, at 2-3.)

In Interrogatory 3, Kimble asked Boughton, Kartman, and Broadbent what – *besides* the 2015 assault conduct report – caused Kimble to continue to pose a threat, thus preventing his release to general population. In response, Boughton referred to his response to Kimble's Interrogatory 1; Kartman explained why he believed the 2015 assault required continued placement in AC; and Broadbent referred to a Wisconsin Administrative Code section providing that an inmate may be retained in AC status if there is reason to fear violent behavior.

In Interrogatory 4, directed to all defendants, Kimble asked whether the unit team conducting AC reviews is "in the best position not only to gather the necessary information for the review but to also assess whether an inmate remains a risk to others if promoted" to another phase. Each defendant responded by explaining his understanding of the review process, clarifying the role of the unit team in relation to the Administrative Confinement Review Committee (ACRC) and the warden. (*See* dkt. 70-2, at 6-8.)

Kimble does not direct the court to any specific deficiency in these answers that would require defendants to supplement their responses. Instead, Kimble disagrees with these responses, arguing that they are insufficient reasons to justify defendants' handling of his AC placement. These arguments bear on the merit of his claims in this lawsuit, not on whether defendants responded adequately to his interrogatories. Accordingly, I am denying Kimble's motion to compel with respect to defendants' interrogatory responses.

Kimble also asked defendants to produce documents related to other inmates' AC placement, enrollment in HROP or PACE, the reason for their placement, any conduct reports received during their AC placement, and their removal from AC. Defendants objected to this request, on the ground that other inmates' records are confidential and irrelevant to Kimble's Fourteenth Amendment due process claim, and because Kimble is not entitled to other inmates' confidential material. Defendants are correct: this information is not relevant to Kimble's claims, which requires Kimble to prove that "(1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 483 F.3d 934, 939 (7th Cir. 2007). In the context of Kimble's challenge to his continual placement in AC, he has the right to a periodic review of his placement that is "meaningful and non-pretextual." *Isby v. Brown*, 856 F.3d 508, 524-25 (7th

4

Cir. 2017). In reply, Kimble insists that this information is relevant to his claim, but he does not explain how. This is not an equal protection lawsuit. Information about other inmates's experiences related to AC placement and removal, and their conduct reports, simply are not relevant to Kimble's claims that defendants failed to conduct a meaningful review of *his* placement. Therefore, I will not compel defendants to produce these materials.

In his second motion – which Kimble calls a letter but asks defendants to respond – Kimble similarly asks that I require defendants to address his concerns about their responses to his Third Set of Interrogatories. Defendants object, arguing that Kimble failed to attempt to work out these disputes informally, and that Kimble has not identified any deficiencies in their discovery responses. As to the substance of Kimble's motion, defendants point out that in Interrogatories 1-3, Kimble asked questions related to his initial placement on AC status in June 2016, but Kimble is proceeding on claims related to his *subsequent* continued placements in AC status. Although defendants initially objected on the ground that Kimble's interrogatories were vague, confusing, and required speculation, they argue in their opposition brief that the requests are not relevant to his claims in this lawsuit. Additionally, in Interrogatory 4, Kimble asked Boughton what steps he would have to take to be let out of AC status, and Boughton provided a substantive response. Kimble challenges this response, but he has not explained how this answer was not complete.

In reply, Kimble claims that his letter was not actually a motion to compel, implying that he did not have to attempt to resolve his dispute with defense counsel prior to filing his motion. This argument is specious: Kimble asks for relief from the court related to a discovery dispute. That's a motion. As to the substance of his motion, Kimble does not specify how Interrogatories

5

1-3 may lead to evidence related to his claims in this lawsuit, or why Boughton's substantive response to Interrogatory 4 was incomplete. Accordingly, I am denying this motion to compel as well.

**Motion to revoke medical authorization (dkt. 88)**

Kimble seeks to withdraw his medical authorization, asking that the court also order defendants to amend their summary judgment filings to remove references to Dr. Simcox's report about Kimble. In his reply, Kimble clarifies that he does not wish to withdraw his authorization releasing his medical records. Instead, Kimble asks that he only withdraw his authorization for the release of Dr. Simcox's report. (*See* dkt. 96, at 6.)

As an initial matter, defendants point out that Kimble has already authorized the release of his medical records, and he does not cite legal authority by which he could claw back the release of his records. Defendants raise a fair point; his authorization permitted the custodian of his medical records to disclose the records to defendants. If Kimble were raising a concern about the public disclosure of his medical records in this lawsuit, then I would enter a protective order to avoid public disclosure of sensitive information not pertinent to his claims in this lawsuit. But Kimble is not raising those concerns; instead, he is asking that I strike the report from the record and exclude it from this lawsuit, claiming that it is irrelevant and unduly prejudicial. Therefore, I will construe this motion as a request to strike the report, which I am denying.

Kimble first argues that Dr. Simcox's report is irrelevant. He claims that Dr. Simcox's risk assessment was not complete until the end of July 2019, which was *after* defendant

Boughton decided to keep Kimble on AC status in July of 2019. Kimble also claims that Boughton did not mention or refer to Dr. Simcox's report during Kimble's July 2019 AC hearing or review. Kimble adds that defendants have not disclosed Dr. Simcox as an expert witness in this case, and Kimble has been unable to question Dr. Simcox about the risk assessment, which Kimble argues contains inconsistencies about the risk that he would pose in general population. Kimble adds that because Dr. Simcox no longer is employed at WSPF, Kimble has no way to question him about the report.

In opposition, defendants explain that Dr. Simcox's report and Kimble's PSU file are directly relevant to Kimble's claim against Boughton because defendants' position is that Boughton relied on these materials to determine whether Kimble should remain on administrative confinement status. Specifically, Boughton attests that after Kimble's January 2019 ACRC hearing, Boughton referred Kimble to Dr. Simcox, to complete a risk assessment evaluation, to help assess risks associated with Kimble's return to a general population setting. (Boughton Decl. (dkt. 76) 33-34.) Boughton also states that in July 2019, the ACRC was not unanimous about Kimble's placement on AC, so it was referred to him. Boughton explains that Dr. Simcox's report was not finalized by that date, so he decided to keep Kimble on AC status. (*Id.* ¶ 138.) Boughton further explains that in January 2020, he incorporated Dr. Simcox's report into his decision about Kimble's AC status. (*Id.* ¶ 148.)

Although the parties dispute whether Boughton actually considered Dr. Simcox's July 30, 2019, report when he made any decisions related to Kimble's placement, that dispute does not provide a basis to strike it.

Kimble further claims that it would be unduly prejudicial to include Dr. Simcox's report in the record because Dr. Simcox no longer is employed at WSPF. However, for purposes of summary judgment, the question is not the validity of Dr. Simcox's assessment, but Boughton's review of it. If this case proceeds to trial, Kimble has the ability to collect evidence from Dr. Simcox by requesting a trial subpoena for him. Seeing no basis to strike Dr. Simcox's report from the record, Kimble's motion is denied.

All of this said, if I have misinterpreted Kimble's statements in his motion and he does not want this lawsuit to include any reference to Dr. Simcox's report out of concern for public disclosure of sensitive information about this history, then he should clarify this. However, defendants' second point in their opposition brief is apt: Boughton is entitled to defend Kimble's claim against him by submitting the information that Boughton considered when he kept Kimble on AC status. If Kimble genuinely wishes to strike Dr. Simcox's report from the record, I will have little choice but to exclude from this lawsuit any claim related to Boughton's post-July 2019 review of Kimble's AC status.

**Motion for in-camera review (dkt. 89)**

Finally, Kimble asks that the court conduct an in-camera review of documents responsive to his request for the AC placement decisions and disciplinary records or multiple other inmates. Kimble explains that during the course of discovery, he obtained an email from August of 2017, in which WSPF employees Brown and Dickman compared Kimble's AC placement to another inmate's AC placement. (*See* dkt. 96, at 7-10.) Kimble maintains that he should be able to gather evidence to pursue a theory that defendants treated Kimble differently than other inmates

who had a similar history of assault within an institution. However, as previously noted, Kimble is not proceeding in this lawsuit on a Fourteenth Amendment class-of-one equal protection claim. As explained above, the relevant inquiry with respect to Kimble's due process claim is whether defendants' review of his ongoing AC review was meaningful, not whether he was being treated better or worse than other prisoners. Kimble has not shown that the production of other inmates' AC records and disciplinary history will lead to relevant or admissible evidence.

## ORDER

IT IS ORDERED that:

1) Plaintiff Bobby Kimble's motions asking the court to deny an extension (dkt. 65) and for an immediate injunction order and hearing (dkt. 66) are DENIED.

2) Plaintiff's motion to dismiss (dkt. 62) is GRANTED. Pursuant to Federal Rule of Civil Procedure 15(a), Kimble's retaliation claim against Boughton, and his Fourteenth Amendment due process claim against Gardner will be dismissed, and Gardner will be dismissed from this lawsuit. These dismissals are with prejudice.

3) Plaintiff's motions for stipulation (dkts. 83, 84) are DENIED without prejudice.

4) Plaintiff's motions to compel (dkts. 70, 85, 95) are DENIED.

5) Plaintiff's motion to revoke medical authorization (dkt. 88) is DENIED.

6) Plaintiff's motion for in camera inspection (dkt. 89) is DENIED without prejudice.

Entered this 9th day of March, 2021

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge